FILED IN CLERK'S OFFICE
U.S.D.C. -Gainesville

JAN 1 4 2014

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM BOBBY BROWN, | * | |
| RONALD MAYHEW, | * | CIVIL ACTION |
| CONNIE MAYHEW, | * | |
|           Plaintiff, | * | |
| | * | FILE NO. |
|   vs. | * | |
| | * | **2:14-CV- 014** |
| SUNTRUST BANK, | * | |
| SUNTRUST MORTGAGE | * | |
|               Defendants | * | |

## VERIFIED PETITION AND COMPLAINT

COMES NOW, William Bobby Brown, Claudia C. Brown, Ronald F. Mayhew and

Connie D. Mayhew, petitioners and plaintiffs in the above-styled action (hereinafter referred to

as "Plaintiff") and hereby files this verified complaint against the Defendants SUNTRUST

MORTGAGE and SUNTRUST BANK and would respectfully show this Honorable Court as

follows:

### PARTIES

1. Plaintiff William Bobby Brown is a permanent resident citizen of Forsyth County, State

of Georgia and a citizen of the state of Georgia and resides within this judicial district

and division.

2. Connie D. Mayhew, whose husband is Ronald F. Mayhew, is the daughter of William

Bobby Brown, residents at 9140 Ivyshaw Landing, Gainesville, Georgia during the time of the incident complained of herein.

3. SunTrust Bank conducting the acts alleged herein is a foreign corporation whose address is 1001 Semmes Avenue, Richmond, VA 23224 as stated on the court filed assignment document from SunTrust Mortgage to SunTrust Bank, Forsyth County Deed Records Book 6313, page 604.

4. SunTrust Mortgage is a foreign corporation organized and existing under the laws of a state other than Georgia.

5. This action, therefore, is also a controversy between citizens of different States for purposes of invoking the original jurisdiction of the federal district courts pursuant to 28 U.S.C. § 1332.

6. Plaintiffs in the Civil Action, give further notice that the Civil Action is an action in which there is diversity of citizenship and the amount in controversy is in excess of $75,000.00 pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441.

7. Plaintiffs are seeking relief for, among other things, alleged violations of the Fair Debt Collection Practices Act ("FDCPA), 15 U.S.C. § 1692 et. seq. These allegations and claims for relief arise under federal law, sufficiently invoking this Court's original subject matter jurisdiction under, *inter alia*, 28 U.S.C. §1331, and present a federal question.

8. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in the Gainesville Division.

10. **FACTUAL BACKGROUND**

11. William B. Brown applied for a residential mortgage loan from SunTrust, in the state of Georgia, the repayment of which was to be secured by the pledge of Georgia real property as set forth in a uniformly written deed to secure debt (Exhibit A).

12. The Property is described as follows: All that tract or parcel of land lying and being in Land Lot 1260 of the 14th District, 1st Section, Forsyth County, Georgia, being Lot 12, Ivyshaw Landing (in Ivyshaw Park) Subdivision, as per plat recorded in Plat Book 66, Page 168, Forsyth County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description. Said property being known as 9140 Ivyshaw Landing according to the present system of numbering houses in Forsyth County, Georgia.

13. The Property was the primary residence of William Bobby Brown. Mr. Brown has suffered multiple heart attacks and as a result he has diminished heart function and a large blood clot inside his heart. These conditions are such that there is no treatment available to him. He has been placed on oxygen due to decreased lung function. Due to Mr. Brown's incapacitation, Ronald F. Mayhew has been designated as his Power of Attorney (Forsyth County Deed Records, Book 6107, page 665-668).

14. SunTrust hired and dictated the closing attorney for this loan. The following negligent acts were done:

a. The 1085 Maximum Flood Easement for Lake Lanier was not disclosed on the title search, on the deed or the plat (Exhibit B). The Mayhews and Browns did not know that the home in question and a portion of the lot was encroaching onto a government easement thus affecting title to the property.

b. The statutory required Common Area for all phases of the Ivyshaw Park subdivision

was fraudulently transferred to the developers so that they could place the subdivision's community septic system on that property for the exclusive use of Lots 5 through 14 in the Ivyshaw Landing phase of the Ivyshaw Park Subdivision (Exhibit C). That community septic system serves 9140 Ivyshaw Landing and is placed upon stolen property. Further the entire subdivision is out of compliance with code because the statutory required common area has been wrongfully taken for the personal gain of the developers.

c. SunTrust Mortgage required Brown to acknowledge the covenants of the subdivision, but the closing attorney negligently did not ensure Brown was protected by ensuring that state law was followed in the establishment of a maintenance account for the Community Septic System or that the neighborhood covenants were written and followed in accordance with law to adequately maintain the Community Septic System which the home depends for sewage management.

d. SunTrust Mortgage knows that this activity, and the further activity below presented, is rampant in Georgia and SunTrust Mortgage offers insurance against such wrongdoing as shown in the brochure they distribute (Exhibit D). However, SunTrust Mortgage, has not offered such insurance to Brown.

e. SunTrust Bank pushed the foreclosure through in order to ensure that the above issues never came to light and that the deficiencies with the property were covered up. In so doing, SunTrust Bank made itself party to the racketeering scheme of fraud for profit that is exposed below. Due to the criminal acts creating deficiencies in the property title, the property compliance with state and federal law and the ultimate habitability of the property, the property cannot be marketed. Yet, SunTrust Bank,

knowing that these issues exist, foreclosed the property to enjoy the profits of selling the property to another unsuspecting member of the public. This type of criminal activity is commonplace in Forsyth County. Even Forsyth County has conducted itself in such a manner by conducting a tax sale of lots in the Greenleaf Subdivision without divulging the buyers that the property could not be developed due to the infrastructure falsifications by the developers (Exhibit E). The United States government prosecuted the developers of that Greenleaf Subdivision for a similar fraud to this in Ivyshaw Landing, but gave the County a free pass.

15. The engineering design of the subdivision which the Property is located, Ivyshaw Landing, was falsified when the preliminary plats were submitted to the county for approval of the subdivision. The Community Septic System and the hydrology for the subdivision were falsified. These falsifications are exposed in a written report by Rindt-McDuff Associates dated August 26, 2010 (Exhibit F).

16. The Community Septic System which serves the residence in question at 9140 Ivyshaw Landing was placed upon the Common Area stolen from the whole subdivision of 68 lots. The design of the Community Septic Systems for Ivyshaw Landing Subdivision were submitted to Forsyth County using a Level 2 soil study by Geosciences Engineering, a Level 3 soil study is required, per the Rindt-McDuff report. The Level 2 Soil Study incorrectly represents the soil and topography properties for the location that the Community Septic Systems are installed. The Level 2 Soil Study also omits a spring head and its required 100 ft. buffer as shown on a Level 4 Soil Study commissioned by the Mayhew and Brown and conducted by KW Soils. The design of the Community Septic System encroaches into that required buffer area. A spring head on Corps

property is omitted which the Community Septic System encroaches. The Community Septic System would not have been approved in its current design if the correct soil data had been used. The County does not have an engineer approved design for the Community Septic Systems using a Level 3 or greater soil study as required by the State of Georgia (Exhibit G).

17. No hydrology study has been produced by Forsyth County, even though hydrology is required per the Forsyth County Unified Development Code Table 18.1 and by the Clean Water Act for discharges into federal waters resulting in major erosion and sedimentation into Federal Waters. The scant hydrology data that is placed in the preliminary plats is falsified in order to get the subdivision approved by the county. The final plat and approval of the subdivision were based upon those falsified documents. The home is subject to flooding due to the false hydrology inserted onto the preliminary plats.

18. Additional subdivision violations include,

a) installation of individual septic systems in violation of state law and without regard for the consequences to public health and safety. Individual septic systems have been install on Lots 17 and 18 in violation of state law, Lot 3 does not meet the minimum required square footage for individual septic installation (27,500 sq. ft.) resulting in the leaching of nitrates and septic effluent onto adjacent Corps property and into Federal Waters causing a harmful risk to health.

b) the Maximum Flood Elevation contour was moved causing the home at 9140 Ivyshaw Landing to be built within the original government easement thus creating land at the expense of the government for the profit of those developers. These wrongful acts

were done in order to subdivide the property into more lots in the subdivision than would otherwise have been possible.

c) State fire code violations, homes are built too close together which also results in making it impossible to access and maintain the installed septic tanks behind the homes.

d) Corps of Engineer's property was unlawfully cleared of trees and planted with grass behind Lots 12 and 13 in order to fraudulently represent that the home sites had a "grass to lake" setting.

19. The preliminary design plats have been backdated in order to hide the alteration of the 1085 ft. elevation contour by the developers[1] (Exhibit B). As a result the subject home on Lot 12 has been placed within the original 1085 Maximum Flood Elevation for Lake Lanier. The preliminary design plat, on sheet labeled "C of 14", dated 8-19-2000 shows via a hand drawn line that the 1085 Maximum Flood Elevation is located off of Lot 12. However contrary to that representation, a later plat, the Lot 12 Land Disturbing Permit plat dated October 2001, shows the 1085 Maximum Flood Elevation encroaches into Lot 12. Additional evidence of the moving of the 1085 contour is shown in the foundation inspections for the home on Lot 12. That inspection shows that the foundation is built upon up to eight feet of fill dirt (Exhibit H). The final placement of the home and subsequent additions have resulted in the home encroaching the government Maximum Flood Easement for Lake Lanier. Fill dirt was pushed to move the 1085 Maximum Flood

---

1   The Preliminary Plats for the Ivyshaw Landing Subdivision are a hodge-podge of plats numbered in order as follows: Sheet 1 of 12, Sheet 2 of 6, Sheet A of 14, Sheet B of 14, Sheet C of 14, Sheet 1 of 1, Sheet 3 of 8, Sheet 4 of 8, Sheet 6 of 8, Sheet 7 of 8, Sheet 8 of 8, Sheet 8A of 8A, WATER DETAILS. There are no Revisions listed on the cover sheet (Sheet 1 of 12) showing that the developers submitted a perfect plan to the county for approval on the fist attempt.

Elevation contour in order to created the lot for sale to the public, a violation of *33 USC 403 - Sec. 403. Obstruction of navigable waters generally; wharves; piers, etc.; excavations and filling in.*[23]

20. The selling real estate broker, David Bagley, a relative of the Senior Forsyth County Superior Court Judge, Judge Jeffrey Bagley, made false representations that the home was connected to public sewer.

21. The selling real estate broker, David Bagley, made false representations that each lot in the subdivision had a permit from the Corps of Engineers for a double slip dock.

22. The developers represented at the time of the sale that the subject property could be expanded to an eight bedroom home, knowing that the limitations based upon the

---

2  **33 USC Sec. 403. Obstruction of navigable waters generally; wharves; piers, etc.; excavations and filling in:**  The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and **it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of**, any port, roadstead, haven, harbor, canal, **lake**, harbor or refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

3  **33 USC Sec 406: Navigation and Navigable Waters**, Every person and every corporation that shall violate any of the provisions of sections 401, 403, and 404 of this title or any rule or regulation made by the Secretary of the Army in pursuance of the provisions of section 404 of this title shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court.

And further, the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States.

Forsyth County. The owners of Lots 15 and 16 excavated dirt to dig a large hole next to

the Corps property line in order to dump the dredge material from the lake into the hole

on their lot. The dirt from the hole was spread over the two lots. The fill dirt spread

over the lots invalidates the soil study and makes those two lots ineligible for placement

of an individual septic system as they are currently designated. This action also required

a Land Disturbing Permit (LDP) from Forsyth County for Lots 15 and 16. The Corps

did not monitor the obtaining of necessary permits from Forsyth County. Forsyth

County did not issue and LDP under the false excuse that nothing was being done to the

two lots. This allowed each of the owners to install a dock on the lake for the two lots in

order to enhance their property values at the expense of the health and safety of the

public.

29. These falsifications and illegal installations of septic systems within the Ivyshaw

Landing Subdivision have resulted in ongoing septic contamination of the stream on the

western boundary of the subdivision adjacent to Community Septic System 3 and Lots

17 and 18.

30. Forsyth County's contempt for the law is also graphically demonstrated by its callous

disregard for law and its own ordinances in the illegal approval of a flag lot within the

subdivision to the benefit of the developers. Flag lots are prohibited by the Forsyth

County Uniform Development Code.[5]

31. Defendants SunTrust Mortgage and SunTrust Bank have now profited from the fraud by

taking the property under foreclosure and selling the property to another unsuspecting

---

5 Forsyth County Uniform Development Code 18-4.13 **Flag Lots and Tracts Prohibited**. No
lot within a major  subdivision plat shall be approved which constitutes a flag lot.

party, with no disclosure, no warranties and refusing to offer any financing, i.e. a cash transaction.

32. Demonstrative of the willingness of the Developers to do anything to sell a lot, the Developers amended the subdivision covenants in order to sell Lot 17. The upper lots which were targeted to have individual septic systems installed were exempted by Amendment 1 to the covenants from any financial responsibility for the maintenance of the Community Septic System. Now, ironically, those lot owners that have removed themselves from the Community Septic System are the ones that have the failing and illegal individual septic systems.

33. The county operates under the belief that no single homeowner can stand up against the combined misrepresentations by county agents to cover up the frauds. No single homeowner will get the assistance or backing from his neighbors because the neighbors have been solicited and, in fact, have violated the law with regard to their property and have put their homes on the market for sale to pass the fraud without divulging any knowledge of the deficiencies.

34. Failures have already occurred causing flooding of the Property and failure of septic systems within the subdivision as noted above. If the subdivision is allowed to be finished, then the systemic failures will be amplified and there will be no where to turn to make any corrections largely due to the arbitrary and capricious reduction in performance standards (i.e. reduction of lot size) of the subdivision for the financial benefit of the Developers (Barnett, Bennett and Reid). The end result will be the same as the Greenleaf Subdivision which is now abandoned and left to the lenders and tax payers to correct. Forsyth County embarked on a plan to sell off the lots in the

Greenleaf Subdivision under the false pretenses that it could be developed, knowing that the infrastructure was not available to issue permits and that no land was available for the infrastructure to be installed. Those fraudulent transactions had to be reversed having caused harm and anguish to the buyers.

35. The egregious violations of law herein described did not occur in any way as a result of ignorance, negligence or by mistake. The three Developers, Bill H. Barnett, Danny Reid, and Danny Bennett, all had existing business relationships with county officials. At the time of the vote by the County Commissioners Developers Danny Reid and Danny Bennett were major stockholders and nominees for the Board of Directors of Forsyth Bancshares, Inc., the holding company for the Citizens Bank of Forsyth County. Also along side of them were Forsyth County Government Officials such as: Superior Court Judge Jeffery Bagley, Michael P. Bennett (County Commissioner), Talmage W. Bolton (Forsyth County Zoning Department). Zoning changes were required for the subdivision approval as well as variance from the approved county ordinance which essentially bypassed the established county ordinance without any justification, simply a rubber stamp to allow the Developers to profit at the expense of Lake Lanier, the Mayhews and Browns, the banks and the tax payers.

36. Bill Barnett was at the time of the approval of the subdivision a business partner with County Commissioner Michael Bennett. County Commissioner Michael Bennett was party to the unanimous vote on July 24, 2000 by the County Commissioners to approve the Ivyshaw Landing Subdivision with all of the deficiencies described herein.

37. All of the Commissioners and the Planning Commission signed a affidavit that they did not have a conflict, when conflicts did exist in this matter demonstrating an abuse of

office.

38. The owner's wife of Lot 15 works in the County Commissioners' office. During dredging of Lake Lanier to be able to install docks which were originally promised by the Developers, Lots 15 and 16 were covered with a large amount of fill dirt from a pit dug on the lots into which dredge material was dumped. The spreading of the excavation dirt from the dump pit was done without a permit from the County, thus invalidating the soil analysis and making Lots 15 and 16 unusable for an individual septic system. The Lot 15 owner applied for an Individual Lot Permit (IL#070764) to do this work as required by County code, however the County responded falsely that only dredging of Lake Lanier was taking place. The fact that dirt was being spread over the entire lot had to be kept quiet because the County knew that there was no additional capacity in the Community Septic System for Lots 15 and 16 to be added (Exhibit L). The owner of Lot 16 did not apply for a permit for the land disturbing activity on the lot. The presence of the fill dirt on lots 15 and 16 has been hidden from the public. The County has participated in activities which will cause septic system failure and overloading of the Community Septic Systems causing harm to the Mayhews and Browns, the subdivision's lenders, Lake Lanier (Federal Waters) and the tax payers.

39. Forsyth County ordinances have simple guidelines for subdivision development which were not followed due to the corrupt relationships with multiple county officials motivating them to look the other way. Lot size needed for an individual septic system permit, which is being violated in a fraud for profit scheme which ultimately leaves the victim homeowners responsible for the intentional wrongdoing of developers, state and county officials. With the complicity of state and county officials, this wrongdoing is

usually too big for one individual homeowner to fight alone.

40. After the developers installed the sub-standard infrastructure the developers' plan was to escape liability by soliciting the victim homeowners to violate the law. The developer gets out of the picture by turning the fraud over to the hapless homeowners, then when the systemic failures occur, those same homeowners are given the blame for having overloaded the systems, which was done at the solicitation of the developers.

41. SunTrust's mortgage recorded in Forsyth Deed Records, Book 4367, Page 538-560 (Exhibit A), states in paragraph 21., "*Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge...*" SunTrust Mortgage (Lender) was been notified of these deficiencies numerous times and counsel for SunTrust Mortgage, Monica Gilroy, related to Plaintiffs the Mayhews that she knew the property could not be foreclosed, could not be marketed and that SunTrust and the Browns/Mayhews were allied together. SunTrust Mortgage counsel Monica Gilroy then gave legal advice to the Mayhews in a recorded conversation to expand the Mayhews and Browns' lawsuit to bring in everyone that had any culpability in these matters and that should be done in federal court.

42. As related in the Forsyth County Uniform Development Code dated May 22, 2000 at section 18-5.23 states:

*18-5.23 Common/Amenities Areas. In residential developments, a common area to be used by the homeowners for a playground and/or park must be provided in any subdivision planned for fifty (50) units or more. This area shall be provided at the rate*

*of no less than five (5) percent of the total area of land within the proposed subdivision. Any amenities area may be used as credit for common area. The common/amenities areas must be accessible. In residential developments, any amenities area, tennis court, swimming pool, playground, etc. must be permitted and under construction before the issuance of a Final Plat.*

43. The residents of Ivyshaw Park Subdivision were vested in the Common Areas by the law above and as established in the Ivyshaw Park Final Plat filed in Plat Book 64, Page 90 in the Forsyth County Superior Court on January 16, 2001 (Exhibit T) and the subsequent "Declaration of Covenants, Conditions, Restrictions, and Easements for Ivyshaw Park" in Forsyth County Deed Book 1828, page 268 filed on January 19, 2001, Article 3.01 (Exhibit U).

44. Lots in Ivyshaw Park were sold off to private owners beginning on June 15, 2001 (Forsyth County Deed Records Book 1954, page 767 with multiple lots being sold to private parties.

45. Subsequently, Ivey Shaw, LLC fraudulently and with the full approval, complicity and support of all of the Forsyth County Government deeded off the two designated Common Areas #1 and #2 to Ivyshaw Landing Neighborhood Property Owners Association in order to install Community Septic System drain fields and tanks on that lawfully protected property. That transfer recorded in Forsyth County Deed Book 2112, page 226, filed on November 21, 2001 (Exhibit C) was a theft of property from the owners in Ivyshaw Park Subdivision by the Ivey Shaw, LLC. A new and revised plat of the Ivyshaw Park Subdivision was subsequently filed with the Forsyth County Clerk of Superior Court in Plat Book 68, page 184 on January 23, 2002 (Exhibit V). In Final Plat

Note #12, the Developers purport that the stolen Common Areas #1 and #2 are used to meet the statutory requirement for 5% of the land area to be set aside as protected Common Area. This was a knowingly false representation.

46. The theft of property did not stop with the theft of the Ivyshaw Park Common Areas, they further were bold enough to steal public property from the U.S. Army Corps of Engineers by clearing and filling Corps property within the 1085 Maximum Flood Elevation of Lake Lanier in order to build 9140 Ivyshaw Landing.

47. One June 5, 2012 Plaintiffs Ronald Mayhew and Connie Mayhew met with counsel for Defendant SunTrust Mortgage, Monica Gilroy, at the Forsyth County Courthouse. Monica Gilroy is quoted from that recorded conversation,

Gilroy: "*I get that totally and I think that is in a way why we are aligned. Because you have brought that to our attention. There is a problem.*"

Gilroy: "*I think what you should do is add other people especially now that you are in District court. Judge Story is a good judge. A very fair judge....The people on your side would include the Corps.*" Gilroy: "*Sue everybody and their brother. The case kind of starts fresh. It gets kind of crazy.*"

Gilroy: "*I'm certainly going to recommend to them, don't foreclose, we're sitting on a time bomb.*"

Gilroy: "*And what I can do is I can become sort of the voice of reason on the other side. I have spoken with them, they have kept us informed. I could help you. I can certainly help*"

Gilroy: "*It's more to our benefit to see this resolved.*"

48. The day after the Gilroy conversation on June 6, 2012, and unknown to the Plaintiffs,

SunTrust Mortgage assigned Plaintiff William Bobby Brown's mortgage deed to SunTrust Bank in Virginia, Forsyth County Deed Records Book 6313, Page 604. (Exhibit W)

49. Contrary to the representations of Defendant SunTrust Mortgage's counsel, Defendant SunTrust Bank notified Brown in writing of the intention to advertise and sell the subject property through non-judicial foreclosure. The property was sold at foreclosure sale on August 7, 2012 and transferred into the name of Defendant SunTrust Bank by foreclosure deed for the amount of $484,500, Forsyth County Deed Records Book 6395, page 17 (Exhibit X).

50. Contrary to the representations of Defendant SunTrust Mortgage's counsel, Defendant SunTrust Bank initiated eviction procedures in the magistrate court of Forsyth County (Exhibit Y). A hearing was conducted on October 2, 2012 and a consent judgment (Exhibit Z) was entered whereby the Defendants agreed to vacate the premises by midnight of October 31, 2012. **No Writ of Possession issued.** Defendant SunTrust Mortgage and Plaintiffs were involved in ongoing litigation in the United States District Court for the Northern District of Georgia. Further Defendants continued to rely upon the representations of counsel for SunTrust Mortgage, Monica Gilroy, that the blatant and obvious criminal and environmental issues relating to the property were going to be exposed to proper federal authority and that the property, in fact, was prohibited from being transferred or sold. Neither Defendants SunTrust Mortgage, nor SunTrust Bank ever demanded actual possession of the premises following the passing of the midnight October 31, 2012 date.

51. The next event was the appearance of the Forsyth County Sheriff Warrant Unit dressed

out in tactical gear with automatic weapons to forcibly remove Plaintiffs from the premises on January 16, 2013 (Exhibit ZA). No writ of possession was produced. No writ of possession was issued by the magistrate court or any other court of record. Defendant SunTrust Bank never requested or obtained a writ of possession as required under Georgia Law, O.C.G.A. 44-7-55.

52. SunTrust Bank deliberately placed Plaintiffs lives in jeopardy by making false statements to the Forsyth County Sheriff, "*The Warrant Unit was requested to assist due to threats from the occupants and a large number of firearms located at the residence, per the bank*" (Exhibit ZA, p. 7).

53. The text of Plaintiffs' notice of this wrongdoing to SunTrust Board of Directors is attached as Exhibit ZB. The thefts, trespassing, threats and wanton destruction of property are described in Exhibit ZB. The un-warranted action by Defendant SunTrust Bank resulted in the placing of the Plaintiffs' lives in mortal danger, the theft and destruction of all of the Plaintiffs' personal property and was, in fact, a retaliation for the exposure of the environmental crimes and property thefts which have placed the Defendants' collateral at risk all over the State of Georgia.

RELIEF SOUGHT

54. Plaintiffs request that that:

55. Defendants be found to have intentionally or negligently inflicted emotional distress upon the Plaintiffs;

56. SunTrust Bank be determined to have wrongfully evicted the Plaintiffs;

57. SunTrust Bank be found to have unlawfully destroyed and converted the property of the Plaintiffs;

58. SunTrust Mortgage and SunTrust Bank be determined to have violated the Georgia Consumer Protection Act;

59. SunTrust Mortgage and SunTrust Bank be determined to have violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq.;

60. Actual damages in the amount of $1,800,000 on the residence, $930,000 on the personal property, be awarded to Plaintiffs for their financial losses due to the actions of Defendants and that the amount be trebled to $5,460,000;

61. Compensatory damages, in the amount of $5,000,000, be awarded to them from SunTrust for shock, fright, severe emotional distress, and medical expense that they have suffered or will incur in the future;

62. Punitive damages, in the amount of $300,000,000, be awarded to Plaintiffs from SunTrust for the wanton, willful, malicious and oppressive conduct of Defendants;

63. Attorneys' fees and expenses be awarded to Plaintiffs from SunTrust;

64. SunTrust be ordered to pay court costs;

65. A jury be impaneled to hear this cause; and

66. They be granted such further relief as justice may require.

67. **FIRST CAUSE OF ACTION**

68. **(Wrongful Foreclosure)**

69. Plaintiff incorporates herein each and every allegation stated above, as fully as if repeated verbatim herein.

70. Plaintiffs suffered damages from their wrongful eviction by SunTrust and its employees and associates. Their injuries were either intentionally inflicted or inflicted with gross indifference or gross negligence. Defendants and their employees and associates

described in this Complaint knew or should have known that their conduct would cause these injuries.

71. Plaintiffs are entitled to recover actual, compensatory and punitive damages from Defendants as a result of the wrongful eviction of them from their home.

## 72. SECOND CAUSE OF ACTION

### 73. (Negligent Misrepresentation)

74. Plaintiffs suffered damages from their wrongful eviction by Defendants and their employees and associates.  Their injuries were either intentionally inflicted or inflicted with gross indifference or gross negligence.  SunTrust and its employees and associates described in this Complaint knew or should have known that their conduct would cause these injuries.

75. Plaintiffs are entitled to recover actual, compensatory and punitive damages from SunTrust as a result of the wrongful eviction of them from their home.

## 76. THIRD CAUSE OF ACTION

### 77. (Wrongful Eviction)

78. Plaintiffs repeat here all allegations stated elsewhere in this Complaint.

79. Under the holding in Goerndt v. State, 144 Ga. App. 93, 240 S.E.2d 711 (1977), the landlord's liability for damages for resorting to self-help can include both actual and punitive damages, presumably because of the intentional nature of the actions involved.

80. Plaintiffs suffered damages from their wrongful eviction by SunTrust and its employees and associates.  Their injuries were either intentionally inflicted or inflicted with gross indifference or gross negligence.  SunTrust and its employees and associates described in this Complaint knew or should have known that their conduct would cause these

injuries.

32. Plaintiffs are entitled to recover actual, compensatory and punitive damages from
SunTrust as a result of the wrongful eviction of them from their home.

## 81. FOURTH CAUSE OF ACTION

### 82. (Intentional or Negligent Infliction of Emotional Distress)

83. Plaintiffs repeat here all allegations stated elsewhere in this Complaint.

84. Plaintiffs suffered damages from the outrageous conduct of Defendants and the
employees and associates of Defendants. Their injuries were either intentionally
inflicted or inflicted with gross indifference or gross negligence. Defendants, and their
employees and associates described in this Complaint, knew or should have known that
their conduct would cause these injuries.

85. Plaintiffs are entitled to recover actual, compensatory, and punitive damages from
Defendants as a result of the intentional or negligent infliction of emotion distress on
them.

## 86. FIFTH CAUSE OF ACTION

### 87. (Wrongful Conversion)

88. Plaintiffs repeat here all allegations stated elsewhere in this Complaint.

89. The property loss is a conversion, and includes vandalism, intentional damage and
outright theft.

90. Plaintiffs suffered damages from the destruction of their property by SunTrust Bank and
its employees and associates.  It was destroyed either maliciously or with gross
indifference or gross negligence.  SunTrust and its employees and associates described
in this Complaint knew or should have known that the destruction of the Plaintiffs'

property would cause injuries to them.

91. Even after instituting a dispossessory action and obtaining a writ of possession, a landlord is still restricted on how they handle or treat a tenant at sufferance and their personalty. "[T]he landlord is authorized to evict the tenant, but the landlord must 'plac[e] the tenant's property on some portion of the landlord's property or on other specific property designated by the landlord and approved by the executing officer'." Washington v. Harrison, 299 Ga. App. 335, 339, 682 S.E.2d 679 (2010). (See also OCGA § 44-7-55(c)). The landlord cannot simply toss the personalty helter-skelter out of a second story window, or off an elevated deck, and indiscriminately damage it during even a legal dispossession, even had a legal dispossession occurred. In a very similar case, the dispossessing landlord in Washington removed the personal property from the subject lot causing Harrison to suffer a complete loss.

92. Under Washington, the complete loss of personalty property was determined a conversion, and the dispossessing party had obtained a legal Writ of Possession. Here, the writ was not even requested, much less issued.

93. Plaintiffs are entitled to recover actual and punitive damages from SunTrust as a result of the destruction of their property.

94. **SIXTH CAUSE OF ACTION**

95. **(Criminal Trespass)**

96. The entry upon the property of the Plaintiffs with the intent to forceably remove Plaintiffs under threat of arms in violation of Georgia law while deliberately threatening Plaintiffs and destroying Plaintiffs' property is a CRIMINAL TRESPASS.

97. Plaintiffs suffered damages from the criminal trespass by Defendants and their

employees and associates. Their injuries were either intentionally inflicted or inflicted with gross indifference or gross negligence. Defendants and their employees and associates described in this Complaint knew or should have known that their conduct would cause these injuries.

98. Plaintiffs are entitled to recover actual, compensatory and punitive damages from SunTrust as a result of the criminal trespass.

**99. SEVENTH CAUSE OF ACTION**

**100.       (Racketeer Influenced and Corrupt Organizations Act)**

101.       Plaintiffs ask for a monetary judgment of treble the actual damages of Plaintiffs to date.

102.       Defendants knew that the real property was defective and could not be transferred under the prohibition of transferring fraud to another entity.

103.       Defendant SunTrust Mortgage transferred the fraud to SunTrust Bank who then transferred the fraud to an unsuspecting home buyer, Al Middleton by Special Warranty Deed, Forsyth County Deed Records Book 6855, page .

104.       These transfers were done in order to wrongfully profit from the fraud and done while concealing the true nature of the property being transferred.

105.       Defendants utilized their various law firms, the state and federal courts, the Forsyth County Sheriff and independent contractors to conduct illegal and fraudulent actions in pursuit of the illicit profits they realized from all of these fraudulent transfers.

106.       The effect of these activities were to deprive the Plaintiffs of their property interest, equity, investment and claims against the property while preventing the allegations of the Plaintiffs from coming to light.

107.     Plaintiffs are entitled to recover actual, compensatory, and punitive damages from

Defendants as a result of the Racketeering and egregious nature of the Defendants

actions.

**108.     EIGTH CAUSE OF ACTION**

**109.     (Intentional Infliction of Emotional Distress)**

110.     Mr. Brown is an elderly man currently of the age of 78 years.  His wife, Claudia

Brown, is elderly and of the age of 80 years.

111.     Mr. Brown suffers from devastating heart conditions having suffered multiple

heart attacks and currently suffers from a blood clot inside his heart which is severely

debilitating. Emotional distress for Mr. and Mrs. Brown causes incalculable mental and

physical damage.

112.     Mrs. Brown suffers from dementia and has had all of her clothing destroyed or

stolen, her life long keep sakes destroyed, her personal jewelry stolen by deputies of

Forsyth County and has been driven from the home she knew and understood.

113.     Connie Mayhew suffers from Congenital Adrenal Hypoplasia requiring daily

steroid supplement in order to sustain life.  The long term physical damage from steroid

use is exacerbated by emotional distress.  Emotional distress causes adrenal levels to

fluctuate resulting in difficulty to control adrenal levels.  Such adverse conditions

accelerate tissue damage, it has resulted in onset of diabetes melitus, it has resulted in

shutting down of the thyroid, vision impairment, mental impairment.

114.     Ron Mayhew is hypothyroid due to thyroid cancer which manifest as a 9.5 cm

tumor in the mediastinum which was removed by radical thorocotomy after years of

misdiagnosis as asthma.  Multiple surgeries subsequent to the cancer surgery have been

required to overcome years of misdiagnosis and physical decline including, knee replacement and gastric bypass.

115.    The acts of the defendant which are recited herein above constitute and outrage against these individuals. Plaintiffs have suffered emotional distress and other injuries as a consequence of said acts, not the least of which was the foreclosure of their home and subsequent wrongful eviction with no where to go and destruction and theft of their property.

116.    Plaintiff is entitled to damages, both actual and exemplary, for intentional infliction of emotional distress.

117.    **NINTH CAUSE OF ACTION**

118.    **(Negligence)**

119.    The Defendants had a duty to act in a fair and reasonable manner when dealing with Plaintiff with respect to all issues related to the subject Property.

120.    The Defendants committed tortuous and unconscionable acts towards Plaintiffs as outlined in this complaint, continuing up to the present time.

121.    The commission of such acts constitute negligence, and such negligence was willful, wanton, and grossly negligent.

122.    Plaintiff suffered injuries as a consequence of such actions, to include, but not limited to, emotional distress; slander of title; inability to exercise the full enjoyment of his property, including the right to sell said property or enter into mortgage loan transactions; and attorney's fees and other costs.

123.    Plaintiff is entitled to damages, both actual and exemplary, as a consequence of such actions.

124.    **TENTH CAUSE OF ACTION**

125.    **(Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq.)**

126.    The Defendants have used false and misleading tactics to collect a debt from Plaintiff William Bobby Brown in furtherance of Defendants racketeering enterprise.

127.    Plaintiff suffered injuries as a consequence of such actions, to include, but not limited to, emotional distress; slander of title; inability to exercise the full enjoyment of his property, including the right to sell said property or enter into mortgage loan transactions; and attorney's fees and other costs.

128.    Plaintiffs seek the maximum allowable relief under the FDCPA.

129.    Plaintiff request interest on the judgment at the legal rate until the judgment is satisfied.

130.    **JURY TRIAL DEMAND**

131.    The Plaintiffs demand a jury trial on all issues herein.


Respectfully submitted this _14_ Day of January, 2014

_____        _____
Submitted and Signed: Ron Mayhew        Submitted and Signed: William Bobby Brown

_____
Submitted and Signed: Connie Mayhew


Prepared and Submitted by:
Ron Mayhew
9050 Ivyshaw Drive
Gainesville, GA 30506
(706) 889-4399