IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

WILLIAM BOBBY BROWN, *et al.*,    :
                     :
        Plaintiffs,    :
                     :
        v.    :   CIVIL ACTION NO.
                     :   2:14-CV-0014-RWS-JSA
SUNTRUST BANK and SUNTRUST :
MORTGAGE,    :
                     :
        Defendants.    :

# <u>O R D E R</u>

Plaintiffs William Bobby Brown, Ronald Mayhew, and Connie Mayhew, proceeding *pro se*, initiated this action by filing the Complaint on January 14, 2014, against Defendants SunTrust Bank and SunTrust Mortgage. The action is now before the Court on Defendant SunTrust Mortgage, Inc.'s Motion to Dismiss [7] and SunTrust Bank's Motion to Dismiss [8]. For the reasons discussed below, the Defendants' Motions to Dismiss [7][8] are **GRANTED** and Plaintiffs' Complaint is **DISMISSED**. In sum, the Court concludes that some of Plaintiffs' claims are barred by *res judicata*, and must be dismissed on that ground, and that Plaintiffs have otherwise failed to state a claim for relief against Defendants.

## I.  BACKGROUND

On January 14, 2014, Plaintiffs filed the Complaint [1], naming SunTrust Bank ("STB") and SunTrust Mortgage ("STM") as Defendants. This case arises out of the purchase and foreclosure of Plaintiff William Bobby Brown's property (the "Property"), situated on Lot 12 of Ivyshaw Landing Subdivision ("Subdivision") and located at 9140 Ivyshaw Landing, Gainesville, Georgia. *See* Compl. [1] at ¶¶ 11-12.

This is the second case filed by Plaintiffs in this Court regarding the subject Property. On May 24, 2012, Plaintiffs filed an action in the Northern District of Georgia, Gainesville Division, Civil Action No. 2:12-CV-0120-RWS (the "First Action"), which contained largely the same allegations as the Complaint filed in this action. The original Complaint filed in the First Action named only STM as a Defendant and sought a declaratory judgment voiding the final plat for the Subdivision, as well as an injunction against foreclosure. *See* Complaint [1], filed in the First Action. Plaintiffs later filed a First Amended Complaint, adding Ivey Shaw, LLC ("Ivey Shaw"), the Forsyth County Board of Commissioners, and the Forsyth County Environmental Health Department as Defendants, as well as adding claims for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), intentional infliction of emotional distress, negligence, and fraudulent inducement. *See*

First Amended Complaint [4], filed in the First Action. Plaintiffs also sought actual, punitive, and exemplary damages. *Id.*

On July 13, 2012, Defendant STM filed a Motion to Dismiss in the First Action, and on December 18, 2012, the undersigned entered an Order in the First Action granting the Motion to Dismiss and dismissing all claims against STM. *See* Motion to Dismiss [17] filed July 13, 2012; Order [44] dated December 18, 2012 ("December 18 Order"), in the First Action. Specifically, the undersigned held that Plaintiffs had failed to state a claim against STM under Civil RICO, 18 U.S.C. §§ 1961-68: "Plaintiffs join multiple Defendants in their RICO claim and allege fraud as the predicate offense. Therefore, Rule 9(b) requires Plaintiffs to allege how each Defendant participated in the alleged fraud. Plaintiffs have not set forth sufficient allegations here." December 18 Order at 11-12. Similarly, the undersigned also held that Plaintiffs had failed to state a claim against STM for fraudulent inducement: "[T]o the extent Plaintiffs do attempt to raise a claim against SunTrust Mortgage for fraudulent inducement, they have stated no facts to satisfy Rule 8(a) or Rule 9(b)." *Id.* at 14-15.

The undersigned further held that Plaintiffs had failed to state a claim against STM for intentional infliction of emotional distress: "The Court agrees that Plaintiffs fail to state a claim for intentional infliction of emotional distress." *Id.* at 12. The

undersigned also held that Plaintiffs had failed to state a claim against STM for negligence: "The Court agrees that Plaintiffs fail to state a claim against SunTrust Mortgage for negligence. The Complaints allege no facts indicating that SunTrust acted negligently toward Plaintiffs or that its conduct has caused Plaintiffs harm." *Id.* at 13-14. Finally, the undersigned found that Plaintiffs had failed to establish that they were entitled to the relief of a declaratory judgment that "the final plat for Ivyshaw Landing Subdivision is void," or an injunction barring STM from foreclosing on the subject Property. *Id.* at 15-16.

> Further, as the Court found in its earlier Order, "Plaintiffs do not allege that they are current on their loan payments, nor do they allege that SunTrust does not have the authority to foreclose." (Order, Dkt. [21] at 3.) Thus, because Plaintiffs fail to state a claim against SunTrust upon which relief may be granted, and because SunTrust may rightfully foreclose, SunTrust's Motion to Dismiss Counts I and II (declaratory and injunctive relief) is **GRANTED**.

*Id.* at 15-16. Thereafter, on January 11, 2013, the Clerk entered a final Judgment and dismissed the First Action in its entirety. *See* Judgment [46] dated January 11, 2013, in the First Action.

Just over one year later, on January 14, 2014, Plaintiffs filed the Complaint initiating this action, naming both STB and STM as the only Defendants. Compl. [1] at 1. The allegations set forth below are taken from the Plaintiffs' Complaint [1]. According to the Complaint, Plaintiff Brown applied for a residential mortgage loan

4

from "SunTrust," which was secured by a deed to secure debt on the subject Property. Compl. [1] at ¶ 11. Plaintiffs allege that the Property was the primary residence of Brown, and that Plaintiff Ronald F. Mayhew has been designated as his Power of Attorney. *Id.* at ¶ 13.

Plaintiffs further allege that "SunTrust hired and dictated the closing attorney for this loan," and certain "negligent acts" were done at the time of the closing. *Id.* at ¶ 14. Plaintiffs claim that the development and sale of Lot 12 was shrouded in fraud. *Id.* at ¶¶ 14-46. Plaintiffs allege that the Subdivision was developed by Ivey Shaw, and approved by the County Commissioners on July 24, 2000. *Id.* at ¶¶ 36, 45. Plaintiffs allege that Ivey Shaw falsified the engineering plans for the Subdivision, including septic system and hydrology plans, and that the septic system was faulty. *Id.* at ¶ 14. Plaintiffs allege that Ivey Shaw induced them to purchase Lot 12 through false representations, including concealing a bedroom limitation on the Property and representing that the Property would be connected to a public sewer. *Id.* at ¶¶ 20-22. Plaintiffs further allege that Forsyth County facilitated the falsification of the Subdivision and septic system designs. *Id.* at ¶¶ 35-39.

Plaintiffs allege that SunTrust was aware of this type of fraudulent activity in Georgia, but failed to offer Plaintiffs insurance against this conduct. *Id.* at ¶ 14(d). Plaintiffs state that, although they notified SunTrust of the falsifications, SunTrust

5

foreclosed to "enjoy the profits of selling the property to another unsuspecting member of the public." *Id.* at ¶ 14(e). Plaintiffs also allege that SunTrust "made itself party to the racketeering scheme of fraud for profit that is exposed [in the allegations of the Complaint]." *Id.* at ¶ 14(e).

The Security Deed attached to the Complaint indicates that Brown executed a Security Deed on June 27, 2006, in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as the "nominee for Lender and Lender's successors and assigns," and that SunTrust Mortgage, Inc., was the "Lender." Security Deed, Compl., Ex. A; *see also* Adjustable Rate Note, Mot. to Dismiss [7][8], Ex. B. MERS subsequently assigned its interest in the Security Deed to STM on November 3, 2011, and STM assigned its interest to STB on June 6, 2012. *See* Assignments, Mot. to Dismiss [7][8], Ex. D; *see also* Compl. [1] at ¶ 48.

Defendants contend that Brown subsequently defaulted on the debt and STB accelerated the debt and retained the law firm of Johnson & Freedman, LLC to institute non-judicial foreclosure proceedings, which Plaintiffs do not appear to dispute. Plaintiffs admit that Defendant STB notified Brown in writing of the intent to sell the Property through a non-judicial foreclosure, and the foreclosure sale of the Property took place on August 7, 2012. Compl. [1] at ¶ 49. STB then initiated an eviction proceeding against Brown in the Magistrate Court of Forsyth County. *Id.* at

¶ 50. According to Plaintiffs, a hearing was conducted on October 2, 2012, and a consent judgment was entered in which Plaintiffs agreed to vacate the premises by midnight of October 31, 2012. *Id.* at ¶ 50, Ex. Z.[1]

Although the Plaintiffs consented to vacate the Property by October 31, 2012, Defendants contend that Plaintiffs did not abide by that agreement. *See* Compl. at ¶ 50, Ex. Y. Plaintiffs allege in the Complaint that neither Defendant STM, nor Defendant STB, "ever demanded actual possession of the premises following the passing of the midnight October 31, 2012 date." Compl. at ¶ 50. Defendants contend that the Forsyth County Magistrate Court has found that such consent orders are self-executing and do not require a separate order or writ of possession. *See* Magistrate Order, attached as Ex. E [9][10] to Mot. to Dismiss. On January 16, 2013, the Forsyth County Sheriff's Office performed an eviction at the Property. Compl. at ¶ 51, Ex. ZA. Plaintiffs allege that the police were "dressed out in tactical gear with automatic weapons to forcibly remove Plaintiffs from the premises on January 16, 2013." *Id.* at ¶ 51.

---

[1] Plaintiffs allege in the Complaint that "Defendants agreed to vacate the premises." Compl. at ¶ 50. The Judgment attached by Plaintiffs as Exhibit Z to their Complaint indicates that it was actually the Plaintiffs in this case (who were the Defendants in the underlying dispossessory action), who agreed to vacate the Property before 11:59 p.m. on October 31, 2012. Judgment [1-28], Compl., Ex. Z.

The Plaintiffs have asserted several claims against Defendants STM and STB in the Complaint. In the First Cause of Action, they assert a claim for wrongful foreclosure. *Id.* at ¶¶ 67-71. In the Second Cause of Action, they assert a claim for negligent misrepresentation. *Id.* at ¶¶ 72-75. In the Third Cause of Action, they assert a claim for wrongful eviction. *Id.* at ¶¶ 76-80. In the Fourth Cause of Action, they assert a claim for intentional or negligent infliction of emotional distress. *Id.* at ¶¶ 81-85. In the Fifth Cause of Action, they assert a claim for wrongful conversion. *Id.* at ¶¶ 86-93. In the Sixth Cause of Action, they assert a claim for criminal trespass. *Id.* at ¶¶ 94-98. In the Seventh Cause of Action, they assert a claim under the Racketeer Influenced and corrupt Organizations Act ("RICO"). *Id.* at ¶¶ 99-107. In the Eighth Cause of Action, they assert a claim for intentional infliction of emotional distress. *Id.* at ¶¶ 108-16. In the Ninth Cause of Action, they assert a claim for negligence. *Id.* at ¶¶ 117-23. Finally, in the Tenth Cause of Action, they assert a claim for violations of the Fair Debt Collections Practices Act ("FDCPA"). *Id.* at ¶¶ 124-29.

## II. DISCUSSION

Defendants STM and STB have filed Motions to Dismiss, arguing that all the claims asserted against them in the Complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

A.     *Standard on a Motion to Dismiss*

Defendants have moved to dismiss Plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (*quoting* FED. R. CIV. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiffs are proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). Even though a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

As noted above, a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a plaintiff has referred to documents in the complaint and such documents are central to the

plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation

omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

In this case, Plaintiffs have referred to various documents in the Complaint, including the Security Deed. *See* Compl., Ex. A-ZB. Because Plaintiff attached those documents to the Complaint, they are considered part of the Complaint for all purposes. FED. R. CIV. P. 10(c). In addition, Defendants have also submitted exhibits in connection with their Motions to Dismiss, including the Promissory Note executed by Plaintiff Brown, and the Assignments of the Security Deed. *See* Mot. to Dismiss Exhibits [9][10]. When a court is considering a motion to dismiss under Rule 12(b)(6), documents attached to the motion to dismiss may be considered if the document is both central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*."). "'Undisputed' means that the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276. Because the documents submitted by Defendants are central to the Plaintiffs' claims, and because

they have not challenged the authenticity of those documents, they may be considered as part of the pleadings in this case in resolving the Motions to Dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

B.   *Res Judicata*

Defendants first argue that some of the Plaintiffs' claims asserted in this action are barred by the doctrine of *res judicata*, because the claims were previously brought against STM in the First Action and dismissed. Under the principle of *res judicata*, or claim preclusion, a final judgment on the merits in a civil action operates to preclude a party, or those in privity with that party, from re-litigating in a subsequent proceeding issues that were or could have been raised in the original action. *Federated Dep't Stores, Inc., v. Moitie*, 452 U.S. 394, 398 (1981); *see Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1356 (11th Cir. 1998). The doctrine is "a rule of fundamental and substantial justice, of public policy and of private peace," operating to protect defendants against multiplicious litigation over the same claims, and accordingly, may not be overridden based on equitable considerations. *Federated Dep't Stores*, 452 U.S. at 401 (internal quotes omitted). "The doctrine of *res judicata* is one of finality, providing that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights and responsibilities of the parties and their privies. As to the parties to the prior proceeding and their privies, *res*

13

*judicata* constitutes an absolute bar to a subsequent judicial proceeding involving the same cause of action." *Baptiste v. IRS*, 29 F.3d 1533, 1539 (11th Cir. 1994).

The doctrine of *res judicata* applies if the following four elements are present: (1) there is a final judgment on the merits of the first action; (2) the first decision was rendered by a court of competent jurisdiction; (3) the parties to both actions, or those in privity with them, are identical, and (4) the causes of action in both suits are identical, or the claims asserted in both suits arise out of the same events or the same nucleus of facts. *See Manning v. City of Auburn*, 953 F.2d 1355, 1358-59 (11th Cir. 1992); *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1244 (11th Cir. 1991); *Hart v. Yamaha-Parts Distrib., Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986); *Ray v. Tennessee Valley Auth.*, 677 F.2d 818, 821 (11th Cir. 1982). Significantly, *res judicata* does not bar only those claims actually raised in the first suit; it also bars those claims which the plaintiff *could* have raised in the prior suit, if those claims arise out of the same transactions or events at issue in the prior suit. *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1355 (11th Cir. 2000).

A court may consider the defense of *res judicata* in a motion to dismiss filed pursuant to Rule 12(b)(6) when the existence of the defense can be judged from the face of the complaint. *Starship Enter. of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1253 n.13 (11th Cir. 2013). The court may also take judicial notice of another court's

orders in doing so. *See Tuscano v. Evening Journal Assoc.*, 179 Fed. Appx. 621, 623 n.3 (11th Cir. 2006).

In this case, Defendants have established that all four elements are present with respect to at least some of the Plaintiffs' claims brought in this action. In the First Action, a final judgment was entered by this Court, a court of competent jurisdiction, on January 11, 2013. *See* Judgment [46] dated January 11, 2013, in the First Action. Furthermore, the parties to both actions, or those in privity with them, are identical. In the First Action, the Plaintiffs were the same three Plaintiffs in this action, and STM was one of the named Defendants. In this action, the Defendants are STM and STB, which Defendants contend, and Plaintiffs do not dispute, was in privity with STM and was assigned the interest in the Security Deed by STM. Finally, at least some of the claims asserted in this action arise out of the same events or the same nucleus of facts as those claims asserted in the First Action. Thus, for those claims asserted by Plaintiffs which arose out of the same events at issue in the First Action, *res judicata* precludes those claims. The Court will discuss each of Plaintiffs' causes of action individually below.

    C.    *Plaintiffs' Claims*

        1.    Wrongful Foreclosure

In the Plaintiffs' First Cause of Action, they assert a claim for wrongful foreclosure. *Id.* at ¶¶ 67-71. Plaintiffs allege in the Complaint that Defendant STB notified Brown in writing of the intent to sell the Property through a non-judicial foreclosure, and the foreclosure sale of the Property took place on August 7, 2012. Compl. [1] at ¶ 49.

Under Georgia law, "[i]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies." *Gordon v. S. Cent. Farm Credit, ACA*, 213 Ga. App. 816, 817 (1994); *see also You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67, 74 (2013) ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."). Furthermore, to state a claim for wrongful foreclosure under Georgia law, a plaintiff must allege sufficient facts to establish a plausible claim that the lender or creditor owed a legal duty, the lender or creditor breached that duty, there is a causal connection between the breach of duty and injury sustained, and the plaintiff incurred damages. *See All Fleet Refinishing, Inc. v. W. Ga. Nat'l Bank*, 280 Ga. App. 676, 681 (2006).

The undersigned concludes that, based on the allegations in the Complaint, Plaintiffs' claim of wrongful foreclosure against STM and STB is barred by *res judicata*. As discussed above, the Plaintiffs sought an injunction in the First Action barring STM from foreclosing on the subject Property, and the undersigned held that STM was legally entitled to foreclose on the Property.

> Further, as the Court found in its earlier Order, "Plaintiffs do not allege that they are current on their loan payments, nor do they allege that SunTrust does not have the authority to foreclose." (Order, Dkt. [21] at 3.) Thus, because Plaintiffs fail to state a claim against SunTrust upon which relief may be granted, and because SunTrust may rightfully foreclose, SunTrust's Motion to Dismiss Counts I and II (declaratory and injunctive relief) is **GRANTED**.

December 18 Order at 15-16. Thus, because the Court has previously held that "SunTrust may rightfully foreclose" on the Property, the Plaintiffs may not re-litigate that issue in this case.

In addition, Plaintiffs have otherwise failed to state a plausible claim for wrongful foreclosure against STM or STB. Significantly, Plaintiffs do not dispute that Brown was in default on the loan. They have failed to allege specific facts establishing that STM or STB breached a legal duty or that they suffered damages as a result. Accordingly, Plaintiffs have failed to state a claim for wrongful foreclosure and the First Cause of Action is **DISMISSED**.

2.      Negligent Misrepresentation and Negligence

In the Second Cause of Action, Plaintiffs assert a claim for negligent misrepresentation. Compl. at ¶¶ 72-75. They allege that they suffered "damages from their wrongful eviction by Defendants and their employees and associates." *Id.* at ¶ 74. In the Ninth Cause of Action, they also assert a claim for negligence. *Id.* at ¶¶ 117-23. They allege that "Defendants had a duty to act in a fair and reasonable manner when dealing with Plaintiff with respect to all issues related to the subject Property," and that "Defendants committed tortuous and unconscionable acts towards Plaintiffs as outlined in this complaint, continuing up to the present time." *Id.* at ¶¶ 119-20.

To the extent that Plaintiffs base their claim of negligence or negligent misrepresentation on any events that occurred during the closing of the loan, or at any time prior to the foreclosure sale that occurred on August 7, 2012, those claims are barred by *res judicata*, as discussed above. In the December 18 Order, the undersigned expressly held that Plaintiffs had failed to state a claim against STM for negligence: "The Court agrees that Plaintiffs fail to state a claim against SunTrust Mortgage for negligence. The Complaints allege no facts indicating that SunTrust acted negligently toward Plaintiffs or that its conduct has caused Plaintiffs harm." December 18 Order at 13-14.

Furthermore, the Plaintiffs have also failed to state a claim against STM or STB based on their allegations of the Defendants' conduct after the foreclosure sale occurred on August 7, 2012. When a plaintiff asserts a claim for misrepresentation, he or she must allege facts that must satisfy the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Adams v. Mortg. Elec. Registration Sys.*, 2012 U.S. Dist. LEXIS 54000, at *14 (N.D. Ga. April 16, 2012); *Brown v. J.P. Turner & Co.*, 2011 U.S. Dist. LEXIS 53118, at *5 (N.D. Ga. May 17, 2011). Under Georgia law, to be actionable as negligence or fraud, misrepresentations must be acted upon by the person allegedly defrauded. O.C.G.A. § 23-2-52. The elements of civil fraud are: (1) a false representation by defendants; (2) scienter, (3) an intention to induce plaintiff to act or refrain from acting in reliance upon the representations; (4) plaintiff's justifiable reliance on the false statements; and (5) damages resulting from such reliance. *See Hicks v. Sumter Bank & Trust Co.*, 269 Ga. App. 524, 526-27 (2004).

Moreover, a plaintiff must plead fraud, or negligent misrepresentation with particularity. *See* O.C.G.A. § 9-11-9; *see also* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The particularity rule alerts defendants to "the precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral

and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotes omitted). The Eleventh Circuit has held that "under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (*citing Fitch v. Radnor Industries, Ltd.*, Civil Action No. 90-2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990)); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002). In other words, "to avoid dismissal, a complaint alleging fraud must plead the 'who, what, when, where and how' of the alleged fraud." *Graham v. Mortgage Electronic Registration Systems, Inc.*, Civil Action No. 2:11-CV-00253-RWS, 2012 WL 527665, at *3 (N.D. Ga. Feb. 17, 2012) (*citing Mathis v. Velsicol Chemical Corp.*, 786 F.Supp. 971, 976-77 (N.D. Ga. 1991).

Furthermore, a claim of fraud must generally be premised on false representations related to existing facts or past acts, not to future acts or promises. However, "[w]hile fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is

made, the defendant knows that the future event will not take place." *Hayes v. Hallmark Apartments, Inc.*, 232 Ga. 307, 308 (1974); *see also Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 595-96 (2000) (a false promise made to induce one to enter into a contract is an exception to the rule that fraud cannot be premised on future promises).

In this case, the undersigned finds that Plaintiffs have failed to allege the required elements of negligent misrepresentation with sufficient particularity under Rule 9(b). Plaintiffs have not alleged facts that would be sufficient to establish the "who, what, when, where, and how" of the alleged misrepresentations or sufficient facts to allow the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

In addition, Plaintiffs have also not alleged any facts indicating that Defendants otherwise acted negligently. As discussed in the December 18 Order, under Georgia law, to establish a claim for negligence, a plaintiff must show "(1) a duty . . . recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a failure on [the defendant's] part to conform to the standard required; (3) a . . . causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of the other." *Marquis Towers, Inc. v.Highland Grp.*, 593 S.E.2d 903, 906

(Ga. Ct. App. 2004). To the extent Plaintiffs attempt to allege that either STM or STB owed them a fiduciary duty, Georgia law provides that "[c]reditors deal with debtors at arm's length, and do not stand in a fiduciary capacity in relationship to the debtor." *May v. Citizen & S. Nat'l Bank*, 413 S.E.2d 780, 782 (Ga. Ct.App. 1991). In this case, Plaintiffs have failed to allege any facts in the Complaint indicating that STM or STB owed them any duty or acted negligently toward them.

Accordingly, Plaintiffs have failed to state a claim for negligent misrepresentation or negligence and the Second and Ninth Causes of Action are **DISMISSED**.

### 3. Wrongful Eviction

In the Third Cause of Action, Plaintiffs assert a claim for wrongful eviction. Compl. at ¶¶ 76-80. They allege that they suffered damages from the "wrongful eviction by SunTrust and its employees and associates." *Id.* at ¶ 80. Plaintiffs admit in the Complaint that Defendant STB notified Plaintiff Brown in writing of the intent to sell the Property through a non-judicial foreclosure, and the foreclosure sale of the Property took place on August 7, 2012. Compl. [1] at ¶ 49.

Plaintiffs also admit that STB then initiated an eviction proceeding against Brown in the Magistrate Court of Forsyth County. *Id.* at ¶ 50. According to Plaintiffs, a hearing was conducted on October 2, 2012, and a consent judgment was entered in

which they agreed to vacate the premises by midnight of October 31, 2012. *Id.* at ¶ 50, Ex. Z. The Judgment stated as follows: "A writ of possession shall issue in favor of Plaintiff on October 31, 2012 at 11:59 p.m. Defendants shall be entitled to remain in possession of the Subject Property until said date/time." Compl., Ex. Z. It appears to be undisputed that, on January 16, 2013, the Forsyth County Sheriff's Office performed an eviction at the Property. Compl. at ¶ 51, Ex. ZA. Plaintiffs allege that the police were "dressed out in tactical gear with automatic weapons to forcibly remove Plaintiffs from the premises on January 16, 2013." *Id.* at ¶ 51.

Defendants contend that, although the Plaintiffs consented to vacate the Property by October 31, 2012, the Plaintiffs did not abide by that agreement. *See* Compl. at ¶ 50, Ex. Y. Defendants further argue that the Forsyth County Magistrate Court has found that such consent orders are self-executing and do not require a separate order or writ of possession. *See* Magistrate Order, attached as Ex. E [9][10] to Mot. to Dismiss.

Under Georgia law, "[a] landlord-tenant relationship exists between a legal title holder and a tenant at sufferance such that the dispossessory procedures set forth in OCGA § 44-7-50 *et seq.* are applicable." *Ikomoni v. Exec. Asset Mgmt.*, LLC, 309 Ga. App. 81, 84 (2011) (quoting *Steed v. Fed. Nat. Mtg. Corp.*, 301 Ga. App. 801, 805 (2009)). Furthermore, "[t]he exclusive method whereby a landlord may evict a tenant

is through a properly instituted dispossessory action filed pursuant to OCGA § 44-7-50 *et seq.*" *Id.* at 84 (quoting *Steed*, 301 Ga. App. at 805). If the landlord evicts a tenant without filing a dispossessory action and obtaining a writ of possession, the landlord can be held liable for wrongful eviction and trespass. *See id.* at 84; *see also Steed*, 301 Ga. App. at 80; *Swift Loan Co. v. Duncan*, 195 Ga. App. 556, 557 (1990).

In this case, the undisputed facts indicate that STB filed the dispossessory action in accordance with Georgia law, and, with the consent of the parties, a Judgment was entered that stated: "A writ of possession shall issue in favor of Plaintiff on October 31, 2012 at 11:59 p.m. Defendants shall be entitled to remain in possession of the Subject Property until said date/time." Compl., Ex. Z. Thus, Plaintiffs admit that they consented to the entry of the Judgment, and agreed to vacate the Property after 11:59 p.m. on October 31, 2012.

In Plaintiffs' response to the Defendants' Motions to Dismiss, they nevertheless argue that STB committed a "wrongful eviction" because, Plaintiffs contend, "a Judgment without a subsequent writ of possession does not authorize an eviction." Pl. Br. [26] at 4-5. Plaintiffs, however, have cited no authority for that proposition. It is undisputed that STB obtained a Judgment in the Dispossessory Action against the Plaintiffs stating that: "A writ of possession shall issue in favor of Plaintiff on October 31, 2012 at 11:59 p.m." Compl., Ex. Z. Plaintiffs have cited no authority holding that

a Judgment entered in a dispossessory action is invalid unless there is a wholly separate document titled "Writ of Possession" executed against the tenants holding over after a foreclosure sale. The Judgment states on its face that "[a] writ of possession shall issue," and Plaintiffs have not established that the Judgment was ineffective to constitute a writ of possession as a matter of Georgia law.

In addition, although Plaintiffs argue that Defendants "failed to apply for and obtain a writ of possession to enforce the Consent Judgment," they do not explain what measures the Defendants should have taken to apply for a writ of possession beyond filing the dispossessory action in accordance with Georgia law. Indeed, the Judgment itself states, on its face, that the plaintiff (which is STB, a Defendant in this case) is seeking a writ of possession. *See* Compl, Ex. Z ("The court finds that the plaintiff(s) (is/are) (is/are not) entitled to a WRIT OF POSSESSION and judgment against the defendant(s):"). Thus, it appears that the Plaintiffs are challenging the action of the Magistrate Court of Forsyth County in entering the Judgment without allegedly following the proper procedures for issuing a writ of possession. But Plaintiffs have not alleged that they properly filed a timely appeal of that Judgment in accordance with Georgia law.[2]

---

[2] "It is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626

Moreover, the Plaintiffs have failed to assert any facts plausibly indicating that they suffered damages specifically as a result of the Defendants' alleged failure to obtain a separate document titled "Writ of Possession" beyond the Judgment entered in the dispossessory action. Plaintiffs do not dispute that the foreclosure sale took place, and as discussed above, they have failed to establish that STB acted improperly or illegally when it conducted the foreclosure sale. Indeed, this Court held in the December 18 Order that "SunTrust may rightfully foreclose." December 18 Order at 15-16. Moreover, they do not dispute that STB filed an eviction action against Brown in the Magistrate Court of Forsyth County. Compl. at ¶ 50. They also admit that a hearing was conducted in that eviction action on October 2, 2012, and a consent judgment was entered in which Plaintiffs expressly agreed to vacate the premises by midnight of October 31, 2012. *Id.* at ¶ 50, Ex. Z. In light of Plaintiffs' agreement to vacate the Property by October 31, 2012, and their resulting lack of any legal entitlement to remain in possession of the property, the Court finds that they have failed to allege any facts indicating that they suffered damages as a result of the failure of the Magistrate Court of Forsyth County to issue a separate document titled "writ

_____

(11th Cir. 1997). Thus, to the extent that Plaintiffs are challenging the entry of the Judgment in the dispossessory action as improper under Georgia law, this Court lacks jurisdiction over that claim.

of possession," in addition to issuing the Judgment stating that a writ of possession "shall issue" in favor of STB.

Accordingly, Plaintiffs have failed to state a claim for wrongful eviction and the Third Cause of Action is **DISMISSED**.

### 4. Intentional or Negligent Infliction of Emotional Distress

In the Fourth Cause of Action, Plaintiffs assert a claim for intentional or negligent infliction of emotional distress. Compl. at ¶¶ 81-85. Plaintiffs allege that they suffered damages "from the outrageous conduct of Defendants and the employees and associates of Defendants. Their injuries were either intentionally inflicted or inflicted with gross indifference or gross negligence." *Id.* at ¶ 84. In the Eighth Cause of Action, Plaintiffs assert another claim for intentional infliction of emotional distress. *Id.* at ¶¶ 108-16. They allege that "[t]he acts of the defendant which are recited herein above constitute and [sic] outrage against these individuals. Plaintiffs have suffered emotional distress and other injuries as a consequence of said acts, not the least of which was the foreclosure of their home and subsequent wrongful eviction with no where to go and destruction and theft of their property." *Id.* at ¶ 115.

To the extent that Plaintiffs base their claim of intentional or negligent infliction of emotional distress on any events that occurred during the closing of the loan, or at any time prior to the foreclosure sale that occurred on August 7, 2012, those claims

are barred by *res judicata*, as discussed above. In the December 18 Order, the undersigned expressly held that Plaintiffs had failed to state a claim against STM for intentional infliction of emotional distress: "The Court agrees that Plaintiffs fail to state a claim for intentional infliction of emotional distress." December 18 Order at 12.

Furthermore, the Court finds that Plaintiffs have otherwise failed to state a claim against STM or STB for either intentional or negligent infliction of emotional distress. The Georgia Supreme Court has recognized the tort of intentional infliction of emotional distress by stating:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Yarbray v. Southern Bell Tel. & Tel. Co.*, 409 S.E.2d 835, 837 (Ga. 1991) (quoting The Restatement (Second) of Torts § 46(1) (1965)); *see also Bridges v. Winn-Dixie Atlanta, Inc.*, 335 S.E.2d 445, 447 (Ga. Ct. App. 1985).

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege sufficient facts to establish the following elements: (1) the conduct in question must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct

and the emotional distress; and (4) the emotional distress must be severe. *See Hendrix v. Phillips*, 428 S.E.2d 91, 93 (Ga. Ct. App. 1993); *Bridges*, 335 S.E.2d at 447-48; *see also Gaston v. Southern Bell Tel. & Tel. Co.*, 674 F. Supp. 347, 352 (N.D. Ga. 1987). The burden that a plaintiff must meet in order to prevail on this claim is a stringent one. *Bridges*, 335 S.E.2d at 447.

In order to sustain a cause of action, the defendant's actions must have been so terrifying as naturally to humiliate, embarrass or frighten the plaintiff. *Cornelius v. Auto Analyst, Inc.*, 476 S.E.2d 9, 11 (Ga. Ct. App. 1996) ("The conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (citation and internal quotation marks omitted); *see also Moses v. Prudential Ins. Co. of America*, 369 S.E.2d 541, 542-43 (Ga. Ct. App. 1988); *Sossenko v. Michelin Tire Corp.*, 324 S.E.2d 593, 594 (Ga. Ct. App. 1984); Comment d § 46(1) of the Restatement (Second) of Torts ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'Outrageous!'").

In this case, the undersigned finds that Plaintiffs have failed to allege sufficient facts to establish a plausible claim for intentional infliction of emotional distress under Georgia law against either STM or STB, because they have not alleged the kind of

"extreme and outrageous" conduct that goes "beyond all possible bounds of decency" and would be "utterly intolerable in a civilized community." *Canziani v. Visiting Nurse Health Sys., Inc.*, 610 S.E.2d 660, 662 (Ga. Ct. App. 2005).

Accordingly, Plaintiffs have failed to state a claim for intentional or negligent infliction of emotional distress and the Fourth and Eighth Causes of Action are **DISMISSED**.

### 5. Wrongful Conversion

In the Fifth Cause of Action, Plaintiffs assert a claim for wrongful conversion. *Id.* at ¶¶ 86-93. Plaintiffs allege that they "suffered damages from the destruction of their property by SunTrust Bank and its employees and associates." *Id.* at ¶ 90. Although it is not entirely clear from the Complaint, it appears that Plaintiffs are alleging that either STB or STM was responsible for destroying some of the Plaintiffs' property when the Forsyth County Sheriff's Office performed an eviction at the Property on January 16, 2013. *See* Compl. at ¶ 51, Ex. ZA. Plaintiffs allege that the police were "dressed out in tactical gear with automatic weapons to forcibly remove Plaintiffs from the premises on January 16, 2013." *Id.* at ¶ 51.

In general, to establish a claim for conversion under Georgia law, "the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and

(4) refusal by the other party to return the property." *Washington v. Harrison*, 299 Ga. App. 335, 339 (2009); *see also* OCGA § 44-7-55(c); *Metzger v. Americredit Financial Services, Inc.*, 273 Ga. App. 453 (2005). Plaintiffs have not alleged facts in the Complaint sufficient to establish any of these elements of their claim of wrongful conversion. They do not identify the property at issue nor do they allege any facts demonstrating that they have title to the property or the right of possession. They do not allege that the Defendants ever had actual possession of the property at issue. They do not allege that they demanded the return of the property, or that the Defendants refused to return the property. Nor do they allege any actions by Defendants, as distinct from the law enforcement personnel who effectuated the eviction, in damaging any property.

The Plaintiffs rely on the Georgia statute which provides that, after instituting a dispossessory action and obtaining a writ of possession, the landlord is authorized to evict the tenant, but the landlord must "plac[e] the tenant's property on some portion of the landlord's property or on other specific property designated by the landlord and approved by the executing officer." *Washington*, 299 Ga. App. at 339; *see also* OCGA § 44-7-55(c); *Ikomoni v. Exec. Asset Mgmt.*, LLC, 309 Ga. App. 81, 84 (2011). But Plaintiffs have alleged no facts in the Complaint suggesting a plausible

claim that either STB or STM did not comply with this provision or that they are otherwise liable to Plaintiffs for wrongful conversion.

Accordingly, Plaintiffs have failed to state a claim for wrongful conversion and the Fifth Cause of Action is **DISMISSED**.

### 6. Criminal Trespass

In the Sixth Cause of Action, Plaintiffs assert a claim for criminal trespass. Compl. at ¶¶ 94-98. Plaintiffs allege that "[t]he entry upon the property of the Plaintiffs with the intent to forceably [sic] remove Plaintiff under threat of arms in violation of Georgia law while deliberately threatening Plaintiffs and destroying Plaintiffs' property is a CRIMINAL TRESPASS." *Id.* at ¶ 96.

As discussed above, Plaintiffs do not allege any facts in the Complaint suggesting that STB or STM, or any of their employees, actually entered the Property for the purpose of removing the Plaintiffs after a Judgment was entered against them in the dispossessory action. Instead, the Plaintiffs allege in the Complaint that the Forsyth County Sheriff's Office performed an eviction at the Property on January 16, 2013. Compl. at ¶ 51, Ex. ZA. Plaintiffs allege that the police were "dressed out in tactical gear with automatic weapons to forcibly remove Plaintiffs from the premises on January 16, 2013." *Id.* at ¶ 51. Plaintiffs do not allege that either STB or STM, or

any of their employees, participated in the eviction in any way, and Plaintiffs have not asserted any claims in this action against the Forsyth County Sheriff's Office.

Accordingly, Plaintiffs have failed to state a claim against Defendants for criminal trespass and the Sixth Cause of Action is **DISMISSED**.

### 7. RICO

In the Seventh Cause of Action, Plaintiffs assert a claim against the Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Compl. at ¶¶ 99-107. Plaintiffs allege that "Defendants knew that the real property was defective and could not be transferred under the prohibition of transferring fraud to another entity." *Id.* at ¶ 102. They allege that "Defendant SunTrust Mortgage transferred the fraud to SunTrust Bank who then transferred the fraud to an unsuspecting home buyer, Al Middleton by Special Warranty Deed, Forsyth County Deed Records Book 6855, page [sic]." *Id.* at ¶ 103.

To the extent that Plaintiffs are basing their claim of Civil RICO on any events that occurred during the closing of the loan, or at any time prior to the foreclosure sale that occurred on August 7, 2012, those claims are barred by *res judicata*, as discussed above. In the December 18 Order, the undersigned expressly held that Plaintiffs had failed to state a claim against STM under Civil Rico, 18 U.S.C. §§ 1961-68: "Plaintiffs join multiple Defendants in their RICO claim and allege fraud as the

predicate offense. Therefore, Rule 9(b) requires Plaintiffs to allege how each Defendant participated in the alleged fraud. Plaintiffs have not set forth sufficient allegations here." December 18 Order at 11-12.

Furthermore, for the same reasons expressed in the December 18 Order, the undersigned also finds that Plaintiffs have failed to allege sufficient facts to state a plausible claim that either STM or STB engaged in fraud or violated the Civil Rico statute. Accordingly, Plaintiffs have failed to state a claim against the Defendants for Civil RICO and the Seventh Cause of Action is **DISMISSED**.

### 8. FDCPA

Finally, in the Tenth Cause of Action, Plaintiffs assert a claim against Defendants for violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* Compl. at ¶¶ 124-29. Plaintiffs allege that "Defendants have used false and misleading tactics to collect a debt from Plaintiff William Bobby Brown in furtherance of Defendants [sic] racketeering enterprise." *Id.* at ¶ 126.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Specifically, it "prohibits unfair or unconscionable collection methods, conduct which

34

harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." *Acosta v. Campbell*, 309 Fed. Appx. 315, 319 (11th Cir. 2009) (*citing* 15 U.S.C. §§ 1692d, 1692e, 1692f).

In order to state a claim under the FDCPA, a plaintiff must allege sufficient facts to assert a plausible claim that a defendant is a debt collector as that term is defined in the statute and that it engaged in some act prohibited by the FDCPA, or failed to disclose information required by the FDCPA, in attempting to collect from Plaintiff on a consumer debt. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000). It is well-established that the FDCPA applies only to "debt collectors" and not to creditors or servicers. *See* 15 U.S.C. § 1692a(6); *see also Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (M.D. Fla. April 9, 2012) (the "critical element is whether the defendant is a debt collector" as defined under the statute).

The FDCPA defines a "debt collector" as

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third party is collecting or attempting to collect such debts. For the

purpose of section 1692f(6) . . . , such term also includes any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6).

The statute also excludes from the definition of "debt collector" altogether any person who acquires a debt before it is in default. *See* 15 U.S.C. § 1692a(6)(F). This exclusion "has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default." *Stroman v. Bank of America Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012). A plaintiff's ability to properly classify a defendant as a debt collector is critical because the "FDCPA applies only to 'debt collectors' whose conduct involves the collection a debt." *Evans v. Appalachian Mountain Serv., Inc.,* No. CV611-037, 2011 WL 3739552, at *2 (S.D. Ga. Aug. 24, 2011) (internal citation omitted).

In this case, Plaintiffs allege in the Complaint that "Defendants have used false and misleading tactics to collect a debt from Plaintiff William Bobby Brown in furtherance of Defendants [sic] racketeering enterprise." Compl. at ¶ 126. Plaintiffs have not, however, alleged any facts in the Complaint indicating that either STM or STB could be considered a "debt collector" under the FDCPA. They do not allege any facts indicating that either STM or STB engages in a business which has the "principal

purpose" of collection debts, or that either entity "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Instead, the facts as alleged in the Complaint indicate that STM was the original Lender on Plaintiff Brown's mortgage loan, and Defendants have established that STM later assigned its interest in the Security Deed to STB. *See* Assignments, Mot. to Dismiss [7][8], Ex. D; *see also* Compl. [1] at ¶ 48.

Furthermore, even assuming that STB could be considered a "debt collector" under the FDCPA because it was allegedly assigned an interest in the Security Deed after the loan was already in default, the Plaintiffs have not alleged any facts that STB ever took any specific actions against the Plaintiffs that were in violation of the FDCPA. Plaintiffs allege only that Defendants used "false and misleading tactics to collect a debt from Plaintiff William Bobby Brown." Compl. at ¶ 126. Plaintiffs' FDCPA claim appears to be brought under 15 U.S.C. § 1692e, which provides in relevant part that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. But Plaintiffs have failed to allege any facts suggesting a plausible claim that STB ever used any false, deceptive, or misleading representation in connection with any attempt to collect a debt.

The only actions that Plaintiffs allege in the Complaint that STB took against them to collect the "debt" was to initiate foreclosure proceedings and conduct a foreclosure sale of the Property. While the FDCPA defines "debt collector," *see* 15 U.S.C. § 1692a(6), the Act provides no definition of "debt collection." *See Warren v. Countrywide Homes, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. 2009). The Eleventh Circuit has held, however, that foreclosing on a security interest is not generally considered "debt collection" activity for the purposes of the FDCPA except under certain limited circumstances. *Warren,* 342 Fed. Appx. at 460 ("the plain language of the FDCPA supports the district court's conclusion that foreclosing on a security interest is not debt collection activity for purposes of § 1692g" and "an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)" (internal citations omitted)); *see also Acosta v. Campbell*, 2006 WL 3804729, at *4 (M.D. Fla. Dec.22, 2006) ("[n]early every court that has addressed the question has held that foreclosing on a mortgage is not a debt collection activity for the purposes of the FDCPA"). Thus, the actions taken by STB in this case in foreclosing on the Property would generally not be considered "debt collection activity" under the FDCPA, except for a claim brought under § 1692f(6). Plaintiffs

have not brought any claim under that section of the FDCPA, nor have they alleged any facts indicating that STB violated that section.[3]

Accordingly, Plaintiffs have failed to state a claim under the FDCPA against the Defendants, and the Tenth Cause of Action is **DISMISSED**.

---

[3] That section of the FDCPA provides in relevant part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if–

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest . . .

15 U.S.C. § 1692f(6)(A).

### III. CONCLUSION

For the reasons discussed above, the Defendants' Motions to Dismiss [7][8] are **GRANTED** and the Plaintiffs' claims are **DISMISSED**. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this  30th  day of September, 2014.


**RICHARD W. STORY**
United States District Judge